UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

WILLIAM THOESEN, on behalf of himself

and his minor son MV,

        Plaintiff,

        Case No. _____

v.

CONNECTICUT DEPARTMENT OF

CHILDREN AND FAMILIES; and

SUSAN HAMILTON, in her official

capacity as Interim Commissioner,

**VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF**

**(42 U.S.C. § 1983)**

## NATURE OF ACTION

1. This is an emergency civil rights action under 42 U.S.C. § 1983 seeking immediate injunctive relief to protect a five-year-old medically complex child, MV from ongoing harm in state custody and to restore him to his biological father, William Thoesen.

1

MV was seized at seven days old based on fabricated allegations and has suffered documented medical neglect, injuries, and abuse during five years in foster care—while DCF has admitted in writing that there are "no safety concerns" with Mr. Thoesen as a parent.

2. MV is in immediate danger. His gastrostomy tube is infected with a "putrid odor," creating life-threatening risk of sepsis and death. He has genital blisters from severe diaper neglect. He has unexplained bruises and a black eye. He has been denied physician-ordered growth hormone treatment during the critical window for effectiveness. MV has stated on camera that he is "scared" and "sad." His parental rights were terminated on August 21, 2025, and adoption is imminent. Without immediate federal intervention, MV will suffer irreversible harm and permanent loss of his constitutional right to family integrity.

3. This Court's immediate emergency intervention is necessary to prevent catastrophic and irreparable harm to both father and child.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

5. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201-2202 and injunctive relief under Fed. R. Civ. P. 65.

6. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in Connecticut and all events occurred in this District.

# PARTIES

7. Plaintiff WILLIAM THOESEN is a Connecticut resident and the biological father of MV., a five-year-old child with Wiedemann-Steiner Syndrome and complex medical needs. Mr. Thoesen brings this action on behalf of himself and on behalf of his minor son MV.

8. Defendant CONNECTICUT DEPARTMENT OF CHILDREN AND FAMILIES (DCF) is a state agency responsible for child welfare services in Connecticut. DCF, through its employees and agents, violated Plaintiffs' constitutional rights by seizing MV based on fabricated allegations, maintaining him in a harmful foster placement for five years despite documented injuries and medical neglect, denying services to Mr. Thoesen while providing them to foster parents, and terminating parental rights despite DCF's own written admission that there are "no safety concerns" with Mr. Thoesen.

9. Defendant SUSAN HAMILTON is sued in her official capacity as Commissioner of the Connecticut Department of Children and Families. As Commissioner, she maintains final policymaking authority over DCF and is responsible for the policies, practices, and customs that resulted in the constitutional violations alleged herein. She has the authority to order MV's immediate return to his biological father.

# FACTUAL ALLEGATIONS

### A. MV's Medical Condition and Unconstitutional Seizure

10. MV was born on October 9, 2020, with Wiedemann-Steiner Syndrome, a rare genetic condition. He requires a gastrostomy tube (g-tube) for feeding and receives specialized medical care.

11. On October 16, 2020, when MV was seven days old, DCF seized him from Mr. Thoesen's care without a warrant, without probable cause, and without exigent circumstances. The seizure was based on DCF's fabricated allegation that Mr. Thoesen was homeless and unable to provide care. This allegation was false—Mr. Thoesen had stable housing at the time.

12. Mr. Thoesen was present at the hospital during MV's birth and demonstrated appropriate parental concern and engagement with medical staff. There was no legitimate basis for removal. The seizure violated the Fourth Amendment.

### B. Five Years in Foster Care: Documented Harm and Medical Neglect

13. MV has been in DCF foster care for over five years, essentially his entire life. During this time, MV has suffered documented harm and medical neglect while in the foster parents' care, including:

14. a. Infected G-Tube: MV's gastrostomy tube has been observed as infected, dirty, and emitting a "putrid odor." Infected g-tubes create life-threatening risk of sepsis, peritonitis, and death. This is an emergency medical condition that exists NOW.

15. b. Genital Blisters: MV developed severe blisters on his genitals from prolonged exposure to soiled diapers, indicating extreme neglect in basic hygiene and care.

16. c. Unexplained Injuries: MV appeared at visits with an unexplained black eye and multiple bruises. DCF has never adequately investigated or documented these injuries.

17. d. Severe Sunburn: MV suffered severe sunburn causing severe pain while in foster care.

18. e. Denial of Growth Hormone Treatment: In July 2024, Dr. Max Horlbeck ordered growth hormone treatment for MV. Despite this physician's order, foster parents have

failed to follow through. MV is now five years old, only 35 inches tall and 27 pounds, severely below normal. The window for effective treatment is closing. Each day of delay causes permanent, irreversible harm.

19. f. MV's Expressed Fear: MV has stated on video that he is "scared" and "sad." A child expressing fear while in state custody is a profound indictment of that placement.

20. Despite these documented injuries and MV's expressed fear, DCF has maintained him in this harmful placement and proceeded with termination of parental rights to clear the path for adoption.

### C. DCF's Devastating Admission: No Safety Concerns

21. DCF's own written assessment, contained in the Family Case Plan dated September 30, 2022, expressly states: "There are no reported challenges, safety/risk concerns for Mr. Thoesen to care for his son, outside of his lack of ability to operate and maintain the GT [gastrostomy tube] as it is related to MV's medical condition" (p. 4).

22. This admission is devastating to DCF's case. To interfere with the fundamental constitutional right to parent, the state must demonstrate a compelling interest. *Santosky v. Kramer*, 455 U.S. 745 (1982). DCF's own written statement that there are "no safety concerns" eliminates any compelling state interest justifying five years of family separation and termination of parental rights.

23. The sole stated concern Mr. Thoesen's purported inability to manage the g-tube, was manufactured by DCF itself through its discriminatory denial of training, as explained below.

### D. The Training Catch-22: Equal Protection Violation

DCF provided MV's foster mother with specialized training in gastrostomy tube care—teaching her cleaning, maintenance, feeding procedures, and how to recognize sign infection.

5

24. DCF refused to provide the same training to Mr. Thoesen, MV's biological father. When Mr. Thoesen requested g-tube training, DCF denied or failed to facilitate the request. Mr. Thoesen has written documented proof that he requested this training multiple times.

25. DCF then used Mr. Thoesen's lack of training, which DCF itself created, as justification for denying reunification and terminating his parental rights.

26. This created an impossible Catch-22: DCF would not reunify MV because Mr. Thoesen lacked training, but DCF would not provide the training. This violates due process under *Armstrong v. Manzo,* 380 U.S. 545 (1965) (government cannot create a condition and then use it against an individual).

27. The discriminatory provision of training to foster parents while denying it to biological parents violates equal protection. DCF treated Mr. Thoesen and foster parents differently without rational basis, much less the compelling justification required when fundamental rights are at stake.

28. The profound injustice: DCF gave training to the foster mother, who then catastrophically failed (resulting in infected g-tube, genital blisters, and multiple injuries), while denying training to Mr. Thoesen, who has demonstrated safe, appropriate, and loving care during all supervised visits.

### E. Professional Consensus Supports Reunification

29. Four independent professionals who observed Mr. Thoesen's care of MV concluded that reunification would be appropriate and in MV's best interests:

30. a. Ted Timmel, LCSW: Licensed Clinical Social Worker who supervised visits and testified to Mr. Thoesen's appropriate, safe, and loving care.

31. b. Holly Hanley, DBH, LCSW: Licensed Clinical Social Worker from the Department of Behavioral Health who evaluated the case and supported reunification.

32. c. Visit Advocates: Two professional visit supervisors Cheri Brown and Maureen O'Neil independently observed appropriate parenting and supported reunification.

33. DCF ignored this unanimous professional consensus and proceeded with termination based on fabricated concerns and biased evaluations.

### F. Systematic Denial of Parent-Child Contact

34. Over five years, Mr. Thoesen has been permitted only approximately 780 hours of contact with MV—representing only 1.8% of MV's life. Foster parents have had MV 99.8% of his life (43,000+ hours).

35. This extreme limitation prevented Mr. Thoesen from developing the relationship DCF later cited as lacking. DCF systematically denied meaningful access, then used the predictable result of that denial against him. Despite limited time, Mr. Thoesen consistently demonstrated appropriate, safe, loving care that was observed and praised by all professionals who witnessed it.

### G. Termination of Parental Rights

36. On August 21, 2025, Connecticut Superior Court terminated Mr. Thoesen's parental rights following proceedings tainted by ex parte communications, fabricated evidence, and systematic denial of due process.

7

37. The termination violated substantive due process because DCF failed to demonstrate a compelling interest. DCF's admission of "no safety concerns" eliminates any compelling justification for permanent destruction of the parent-child relationship.

38. Mr. Thoesen has appealed in state court, but the state appeal cannot remedy the ongoing federal constitutional violations or address MV's imminent danger.

### H. Imminent and Irreparable Harm

39. MV faces multiple categories of imminent, irreparable harm:

40. a. Life-Threatening Medical Danger: Infected g-tube creates immediate risk of sepsis and death. This danger exists NOW and worsens daily.

41. b. Permanent Loss of Growth Potential: Denial of growth hormone treatment during the critical window causes permanent, irreversible harm to MV's physical development.

42. c. Ongoing Medical Neglect: Genital blisters and unexplained injuries demonstrate continuing harm.

43. d. Emotional Harm: MV's expressed fear—stating he is "scared" and "sad"—demonstrates psychological harm.

44. e. Imminent Adoption: With parental rights terminated, adoption is imminent. Once finalized, no remedy will exist to restore the parent-child relationship. Loss of constitutional rights is per se irreparable harm. Mitchell v. Cuomo, 748 F.2d 804 (2d Cir. 1984).

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF SUBSTANTIVE DUE PROCESS

### (Fourteenth Amendment - 42 U.S.C. § 1983)

45. Plaintiff realleges and incorporates by reference all preceding paragraphs.

46. The Fourteenth Amendment protects the fundamental liberty interest of parents in the care, custody, and control of their children. This right is "perhaps the oldest of the fundamental liberty interests recognized by this Court" and is "far more precious than property rights." *Troxel v. Granville*, 530 U.S. 57, 65 (2000); May v. Anderson, 345 U.S. 528, 533 (1953).

47. To justify interference with this fundamental right, the state must demonstrate a compelling interest beyond mere "best interests" determinations—it must show actual unfitness, harm, or danger. *Quilloin v. Walcott*, 434 U.S. 246 (1978).

48. Defendants violated Mr. Thoesen's substantive due process rights by seizing MV, maintaining him in foster care for five years, and terminating parental rights without any compelling state interest justifying this destruction of the parent-child relationship.

49. DCF's own written admission—"There are no reported challenges, safety/risk concerns for Mr. Thoesen to care for his son"—eliminates any compelling state interest. Without safety concerns, there is no constitutional justification for permanent family destruction.

50. The sole stated concern—lack of g-tube training—was manufactured by DCF through discriminatory denial of services. Manufacturing a deficiency and using it to justify

termination violates substantive due process and shocks the conscience. County of Sacramento v. Lewis, 523 U.S. 833 (1998).

## COUNT II

## CHILD'S INDEPENDENT LIBERTY INTEREST

### (Fourteenth Amendment - 42 U.S.C. § 1983)

51. Plaintiff realleges and incorporates by reference all preceding paragraphs.

52. Children have their own independent constitutional liberty interest in maintaining relationships with their biological parents. Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1977).

53. The state cannot force the breakup of a natural family for "best interests" considerations alone without demonstrating parental unfitness. Quilloin v. Walcott, 434 U.S. 246 (1978).

54. MV's constitutional rights have been violated through: (1) removal from his biological father based on fabricated allegations; (2) five years of separation without compelling justification; (3) maintenance in a harmful foster placement where he has suffered documented injuries and medical neglect; (4) subjection to termination proceedings based on manufactured deficiencies; and (5) imminent forced adoption severing his biological family ties forever.

55. DCF has not demonstrated that Mr. Thoesen is unfit. To the contrary, DCF admits there are "no safety concerns." Without a showing of unfitness, MV's constitutional right to his family must prevail.

56. Furthermore, the duration of foster placement does not create constitutional rights for foster parents. "Whatever liberty interest might otherwise exist in the foster family as

an institution, that interest must be substantially attenuated where the proposed removal from the foster family is to return the child to his natural parents." *Smith v. Organization of Foster Families,* 431 U.S. 816, 846-47 (1977).

## COUNT III

## STATE-CREATED DANGER

### (Fourteenth Amendment - 42 U.S.C. § 1983)

57. Plaintiff realleges and incorporates by reference all preceding paragraphs.
58. When the state takes custody of a child, it assumes an affirmative duty to protect that child from harm. *DeShaney v. Winnebago County,* 489 U.S. 189 (1989). The state-created danger doctrine applies when the state itself creates or enhances danger to an individual.
59. Defendants violated this doctrine by: (1) removing MV from Mr. Thoesen's safe care based on fabricated allegations; (2) placing MV with foster parents who have caused him documented harm including infected g-tube, genital blisters, black eye, multiple bruises, and denial of growth hormone treatment; (3) maintaining MV in this dangerous placement despite knowledge of injuries and his expressed fear; and (4) proceeding with termination to enable adoption by the same negligent caregivers.
60. Defendants created the danger by removing MV from a safe environment and placing him in a dangerous one. Defendants knew of the danger—MV's injuries were documented and reported. Despite this knowledge, Defendants maintained the placement with deliberate indifference to MV's safety. This conduct shocks the conscience and violates MV's substantive due process rights. *Pena v. DePrisco,* 432 F.3d 98 (2d Cir. 2005).

## COUNT IV

## VIOLATION OF EQUAL PROTECTION

### (Fourteenth Amendment - 42 U.S.C. § 1983)

61. Plaintiff realleges and incorporates by reference all preceding paragraphs.

62. The Equal Protection Clause requires that similarly situated individuals be treated alike. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

63. Defendants violated Mr. Thoesen's equal protection rights by providing specialized g-tube training to foster parents while denying the same training to him, MV's biological father who has superior constitutional rights.

64. Mr. Thoesen and the foster parents were similarly situated—both were caregivers responsible for MV's medical needs including g-tube management. Yet DCF treated them differently: providing comprehensive training to foster parents while denying it to the biological parent.

65. This differential treatment lacks rational basis, much less the compelling justification required when fundamental parental rights are at stake. Biological parents have "a constitutionally recognized liberty interest that derives from blood relationship, state law sanction, and basic human right" that is superior to foster parents' interests. *Smith v. Organization of Foster Families*, 431 U.S. 816, 845 (1977).

## COUNT V

## UNCONSTITUTIONAL POLICIES, CUSTOMS, AND PRACTICES

### (Monell Claim - 42 U.S.C. § 1983)

66. Plaintiff realleges and incorporates by reference all preceding paragraphs.

67. State agencies can be held liable under § 1983 for constitutional violations resulting from their customs, policies, or practices. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

68. DCF maintains unconstitutional customs, policies, and practices including: (1) removing children based on fabricated allegations; (2) denying services to biological parents while providing them to foster parents; (3) maintaining children in harmful placements despite documented injuries; (4) ignoring professional recommendations supporting reunification; (5) manufacturing deficiencies to justify termination; and (6) pursuing termination even when the agency admits "no safety concerns" exist with biological parents.

69. Interim Commissioner Hamilton maintains final policymaking authority over DCF and is responsible for these unconstitutional customs, policies, and practices. She has failed to train, supervise, and discipline DCF employees who violate constitutional rights, demonstrating deliberate indifference to the pattern of violations.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

### EMERGENCY RELIEF

70. Issue an immediate Temporary Restraining Order:

a. Enjoining Defendants from proceeding with adoption or any state court proceedings affecting MV's custody or Mr. Thoesen's parental rights;

b. Ordering immediate restoration of visitation between Mr. Thoesen and MV within 48 hours;

c. Ordering a comprehensive medical examination of MV by an independent physician within 48 hours to assess current medical status and document injuries;

d. Ordering DCF to produce all records related to MV within 48 hours, including medical records, injury reports, and LINK notes;

71. Grant a Preliminary Injunction:

a. Declaring that Defendants violated Plaintiffs' constitutional rights;

b. Vacating the August 21, 2025 termination of parental rights order;

c. Ordering MV's physical custody be immediately granted Mr. Thoesen's care with appropriate transition plan;

d. Ordering DCF to provide Mr. Thoesen with immediate g-tube training;

e. Ordering immediate implementation of physician-ordered growth hormone treatment;

## PERMANENT RELIEF

72. Enter permanent injunctive and declaratory relief:

a. Permanently enjoining Defendants from pursuing termination or adoption;

b. Ordering MV's permanent return to Mr. Thoesen's custody;

c. Ordering DCF policy reforms to prevent future constitutional violations;

   73. Reserve the right to amend this Complaint to add claims for compensatory and punitive damages against each individual defendants and for attorney's fees under 42 U.S.C. § 1988;

74. Grant such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

## VERIFICATION

I, William Thoesen, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this  /2  day of  December 2025.

_/s/ William Thoesen_
WILLIAM THOESEN
Pro Se Plaintiff
110 Bayberry Lane
Danbury, CT 06811
914-879-0773
Stunned.bt@gmail.com

William Thoesen                                   Exhibit List                   12/11/25

Exhibit A: MV black eye front view

Exhibit B: MV black eye side view

Exhibit C: MV black eye front view

Exhibit D: MV bruise cheek

Exhibit E: MV sun burn after foster vacation

Exhibit F: 7/23/25-William's attempts to coordinate g-tube training

Exhibit G: 7/29/25-William's attempts to coordinate g-tube training and make up visits.

Exhibit H: 8/13/25-William's attempts to schedule g tube training

Exhibit I: William's attempts to schedule g tube training

Exhibit J: 7/16/25-William's attempt to schedule g tube training.

Exhibit K: 7/25/25-William's attempt to schedule g tube training.

Exhibit L: 7/25/25 Email regarding g-tube training.

Exhibit M: 12/3/24-William attempting to coordinate g-tube training

Exhibit N: 11/26/24-Canceled visit with short notice and no parental permission to remove MV from the state.

Exhibit O: 2024 trip to Yale New Haven Children's for check of infected g-tube.

Exhibit P: July 18, 2025 William's concerns regarding Patricia's confusion over g-tube care and cancelled community visit sent to dirty DCF visitation room.

Exhibit Q: 11/25/24-Visit cancelled with less than 30 mins notice child once again traveling without notice or permission.

Exhibit R: 11/24-Email regarding missed visits, make up time and MV missing school.

Exhibit S: Email from William regarding MV sick and with sunburn.

Exhibit T: William and MV bonded.

Exhibit U: William and MV bonded.

Exhibit V: DCF Link notes 2/30/22 Family Case Plan page 4